IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

NAVTECH US SURVEYORS USSA
INC., a Florida Corporation, as successor to
NAVTECH US CAPTAIN US SURVEYORS, INC.,
a Florida Corporation; NAVTECH US CAPTAIN
US SURVEYORS LLC, a Delaware Corporation,

D/B/A "NAVTECH"

CASE NO. 2:19-cv-184-FtM-99MRM

     Plaintiff,

vs.

BOAT/U.S., INC. A/K/A "Boat America Corporation,"
a foreign corporation,

     Defendant.

_____/

**BOAT/U.S., INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE (DOC. 4)**

Defendant, Boat/U.S., Inc. ("Boat/U.S."), hereby submits this Memorandum of

Law in Support of its Motion to Dismiss Plaintiff's Complaint with Prejudice dated

August 27, 2018 (Doc. 4), which Defendant incorporates by reference.

## I.    INTRODUCTION

Plaintiff's Complaint is confusing, scattered, and difficult to understand.  Missing

from the Complaint is a simple, straightforward description of the factual bases for the

claims asserted.  There are also material typographical errors, missing information, and

nonsensical sentences that impede understanding.  The lack of clarity, shotgun pleading,[1]

---

[1]    Count II incorporates paragraphs 11-18, which are all the allegations making up
Count I.  *Keith v. DeKalb Cnty.,* 749 F.2d 1034, 1045 n. 39 (11th Cir. 2014).

and failure to state clear factual support for the claims asserted would be reasons enough to dismiss the Complaint, but there are more substantive reasons for dismissal, addressed below. For the purposes of its Motion to Dismiss, Boat/U.S. has tried to read the Complaint as broadly as possible, and has attempted to interpret the allegations in a way that makes sense.

## II.   ALLEGATIONS OF THE COMPLAINT

Plaintiff, Navtech US Surveyors USSA, Inc., ("Navtech"),[2] alleges in the Complaint that it is (1) an educational and licensure organization for marine surveyors, and (2) a professional association of "subscribing members," presumably marine surveyors. (¶¶7 and 9-10, Comp.). The claims asserted by Navtech appear to be in connection with its membership program, not its educational and licensure services.

The Complaint describes Boat/U.S. as a "foreign corporation which is engaged in the activities supporting boat owners nationwide, ranging from services such as boat insurance, boat loans, discounts on boat-related services and products, and mediation-

---

[2]     There are two other entities named in the caption of the Complaint and its introductory paragraph -- Navtech US Captain US Surveyors, Inc., a Florida corporation, and Navtech US Captain US Surveyors LLC, a Delaware limited liability company – but neither of those entities make an appearance anywhere else in the Complaint. Neither has asserted any claims against Boat/U.S. On the face of the Complaint, Navtech US Surveyors USSA, Inc., appears to be the only Plaintiff, because the Complaint uses the singular word "Plaintiff" throughout, does not ever use the plural version "Plaintiffs," and defines "Navtech" as only Navtech US Surveyors USSA d/b/a "Navtech." ¶2, Comp. Since the filing of the Complaint, Boat/U.S. has been told that all three Navtech entities intend to assert claims against Boat/U.S., but that is certainly not clear from the face of the Complaint. Accordingly, this Motion has assumed the existence of just one plaintiff – Navtech US Surveyors USSA, Inc. – but the arguments asserted herein would be equally applicable against the other two Navtech entities if, in fact, they are included as plaintiffs in the Complaint.

related services with manufacturers and dealers." (¶3, Comp.) Boat/U.S. is further alleged to refer marine survey opportunities to "a preferred list of licensed marine surveyors within Lee County and across the counties of Florida." (¶3, Comp.)

Navtech's claims against Boat/U.S. appear to be based on three alleged things:

(1) that Boat/U.S. has a referral service which gives preferential treatment to marine surveyors who are members of two other organizations, the National Association of Marine Surveyors ("NAMS") and Society of Accredited Marine Surveyors ("SAMS") (¶¶11-12, Comp.);

(2) that Boat/U.S. maintains a website in which NAMS and SAMS are referenced but Navtech is not (¶13, Comp.); and

(3) that the "trade crests and logos" of NAMS and SAMS, as reflected on the website, "bear[] uncanny resemblance to governmental agencies" (¶14, Comp.).

Navtech does not allege that Boat/U.S. has said anything unfair, untrue, or negative about Navtech or its members, or that Boat/U.S. has tried to get others not to use Navtech's members to conduct marine surveys. Also, there are no allegations in the Complaint that Navtech's members are excluded from Boat/U.S.'s alleged referral service or from consideration by Boat/U.S. or any insurer or boat owner who requires a marine survey report.[3]

Exhibit 1 to the Complaint appears to be the entire portion of the website that is the subject of (2) and (3) above. This website provides general information to the public regarding marine surveys – what they are, when they would be required, what types of reports can be prepared, etc. It also gives general information regarding surveys to be

---

[3]     In fact, Navtech itself states on its website that its members' surveys "have been accepted by all major banks, insurance companies, and agents including but not limited to CIT Group, Essex, BoatUS., Major National and International Banks, West Marine and USAA, Reliance, Travelers, and more…" *See* www.navsurvey.com/index.htm.

submitted "to obtain insurance through the BoatUS program."  The website page then provides as follows:

The National Association of Marine Surveyors (NAMS) and the Society of Accredited Marine Surveyors (SAMS) are professional organizations having rigorous examination programs for their membership. BoatUS Marine Insurance underwriters will accept value surveys or pre-purchase surveys from surveyors with a SAMS designation of "AMS" with a specialized classification of "Y-SC" (yacht and small craft) or NAMS designation of "CMS" with a specialized service code of "A" (yacht and small craft). It's appropriate to ask the surveyor you select for a copy of a resume, as well as a sample survey of the type that you are requesting.




For more information **see the NAMS website**

**The National Association of Marine Surveyors**
17049 El Camino Real, Suite 208
Houston, TX 77058
800-822-6267

For more information **see the SAMS website**

**Society of Accreited Marine Surveyors**
7855 Argyle Forest Blvd, Suite 203
Jacksonville, FL 32244
800-344-9077

If you have any insurance questions please call 800-283-2883.

Please note that BoatUS does not endorse or guarantee the performance of surveyors. No warranties expressed or implied are intended or created by this directory. Any questions regarding the scope of a surveyor's inspection, their cost or the content of the reports should be discussed with the surveyor.

(Ex. 1, Comp.).  This language does not expressly endorse or show preference for NAMS and SAMS.  Rather, it notes that particular types of surveys prepared by NAMS and SAMS members with specific designations are acceptable to the insurers underwriting the referenced marine insurance program.  The language in the website excerpt does not

exclude the use or acceptance of other marine surveyors, like those who are members of Navtech.

There are no allegations in the Complaint expressly alleging that Boat/U.S. maintains or operates the website at issue. Also, despite Navtech's allegations that the alleged referrals by Boat/U.S. and the referenced website create "confusion in the marketplace" (¶¶12, 13, and 17, Comp.), there are no allegations that any person or entity has actually been confused by those alleged actions.

There are also three e-mails attached as exhibits to the Complaint, purportedly to show that "multiple members" of Navtech have been "denied opportunities." Only one of those e-mails (Exhibit 3) even mentions or relates to Boat/U.S. Importantly, none of the e-mails reflects that a Navtech member lost a surveying job because of a referral or lack of a referral from Boat/U.S., or because of the references to NAMS and SAMS on a website.

Against this backdrop, Navtech attempts to assert claims for tortious interference with a business relationship (Count I) and violation of the Florida Deceptive and Unfair Trade Practices Act (Count II).

## III.   FIRST AMENDMENT

Navtech's Complaint, at its core, is an attack on a business's first amendment right to identify and/or recommend outside companies of its choosing. It appears that Navtech would like to (1) prevent Boat/U.S. from recommending NAMS and SAMS members unless it also recommends, at the same level, Navtech members, and (2) delete any references to NAMS or SAMS from a website informational page -- or pay

significant damages.  But Navtech cannot, through this lawsuit, seek the punishment of Boat/U.S. for its expression of opinions as to referrals of marine surveyors or which professional organizations to reference on a website, because that would directly infringe upon Boat/U.S.'s constitutionally-protected right to free speech.

In *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943), the United States Supreme Court held that no official can prescribe what opinions an individual may hold.  The Court stated:

> If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, *or other matter of opinion* or force citizens to confess by word or act their faith therein.

*Id.* at 642 (emphasis added).  It is a "basic First Amendment principle" that "freedom of speech prohibits the government from telling people what they must say."  *Agency for Int'l. Dev. V. Alliance for Open Soc'y Intl., Inc.*, 570 U.S. 205, 213 (2013) (quotes and citations omitted).  And "[i]t is well established that First Amendment protection applies not only to individuals, but also to corporations and other associations."  *e-ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265, 1274 (M.D. Fla. 2016), citing *Pac. Gas and Elec. Co. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1, 8 (1986).

Because the First Amendment extends to "the decision of both what to say and what *not* to say" (*Riley v. National Federation of Blind of N. Carolina, Inc.*, 487 U.S. 781, 796-97 (1988) (emphasis in original)), Boat/U.S. has a right to decide which surveyors to recommend or refer to others *and* which ones it wishes to exclude.  In that same vein, Boat/U.S. has a right to decide the professional organizations referenced on its website, and which ones it chooses to exclude.

The protections of the First Amendment bar, as a matter of law, the claims that Navtech asserts in this case.  Navtech cannot plead around this issue, and therefore the Complaint should be dismissed *with prejudice*.

## IV.   NAVTECH'S LACK OF STANDING

It is not clear from the Complaint whether Navtech is attempting to assert claims on its own behalf or on behalf of its members.  Although Navtech has recently represented in a corporate representative deposition that it is asserting claims on its own behalf and *not* on behalf of its members, Navtech has made no attempt to amend its Complaint to provide that clarification.  Also, it is unknown when that decision was made and whether it was before or after the filing of the Complaint.  But either way, whether Navtech is asserting claims on its own behalf or on behalf of its members, Navtech has not properly alleged that it has standing to pursue the claims asserted in the Complaint.

### A.   Navtech does not have Article III standing to pursue claims on its own behalf.

Whether Navtech has standing to meet Article III requirements is a threshold issue.  "Article III of the Constitution of the United States limits the subject matter jurisdiction of federal courts to 'Cases' and 'Controversies.'"  *SEC v. Quest Energy Mgmt. Grp., Inc.*, 768 F.3d 1106, 1108 (11th Cir. 2014) (quoting U.S. Const. Art. III, §2). "A justiciable controversy is one that "can presently be litigated and decided and [is] not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop."  *Wendy's Int'l, Inc. v. City of Birmingham*, 868 F.2d 433, 436 (11th Cir. 1989) (per curiam), quoting *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967).

"The fundamental prerequisite for standing is that the claimant have 'a personal stake in the outcome of the controversy.'" *In re Checking Account Overdraft Litigation*, 780 F. 3d 1031, 1038 (11th Cir. 2014), quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975).  "[A] party 'generally must assert his *own* legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"  *Id.* (emphasis in original).

In order to establish Article III standing, a plaintiff must demonstrate:  (1) injury in fact, "a harm that is both concrete and actual or imminent," (2) causation, "a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant," and (3) redressability, "a substantial likelihood that the requested relief will remedy the alleged injury in fact."  *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (internal citations and quotations omitted).

### 1. Injury in Fact

Conspicuously missing from the Complaint is any clear allegation that Navtech itself, as opposed to its members, has been injured in any way.  Navtech seeks recovery of damages "in the amount of $1.1 million for lost future business from Plaintiff by colluding to accept its members surveys." (¶25, Comp.)  Although this is confusing and Boat/U.S. cannot discern what exactly is being demanded (or what the basis for the demand is), in the context of the Complaint as a whole it appears that Navtech may be claiming that its *members* are the allegedly injured parties and that it is those *members* who have suffered or will suffer future loss of business.  In any event, Navtech has not

clearly alleged any injury to itself and therefore has not established that it has standing to bring the current lawsuit.

### 2. *Causation*

In its Complaint, Navtech also does not allege a plausible or even an implausible theory of causation.  Although Paragraph 16 alleges that Navtech's members' surveys have not been accepted by insurers "in a capricious and arbitrary manner at the behest of BOAT U.S.'s referral services," this again appears to deal with claims potentially held by Navtech's members, not Navtech itself.  Navtech has made no allegations whatsoever showing a "fairly traceable connection" between any alleged injury in fact to itself and the alleged conduct of Boat/U.S.

### 3. *Redressability*

The Complaint also contains no allegations showing "a substantial likelihood that the requested relief will remedy the alleged injury in fact."  Rather, the requested relief – "$1.1 million for lost future business" – again appears to relate to alleged damages suffered by Navtech's members.

To the extent that Navtech intends to pursue this lawsuit on its own behalf, it has not sufficiently alleged that it has to pursue the claims that it has asserted in the Complaint, and this court lacks subject matter jurisdiction over those claims.  Therefore, the Complaint should be dismissed on those grounds alone.  *Stalley ex rel. U.S. v. Orlando Regional Healthcare System, Inc.*, 524 F.3d 1229, 1234-35 (11th Cir. 2008).

**B. Navtech does not have standing to pursue claims on behalf of its members.**

Where a plaintiff association has not suffered an injury in fact, it may, under certain circumstances, have standing to pursue claims on behalf of its members. *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977).  Navtech has not clearly alleged that it has brought this lawsuit on behalf of its members.  But if that is or was its intent, Navtech still would not have standing because it has not alleged sufficient facts to meet the requirements for associational standing:

    1.  that Navtech's members would otherwise have standing to sue in their own right,

    2.  that the interests Navtech seeks to protect are germane to the organization's purpose, and

    3.  that neither the claims asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Id.*

**1.  *Standing of Navtech's Members***

Navtech's Complaint makes no attempt to allege that it has members who meet the above-described requirements for standing.  The only possible allegations that are specific to its members are found in Paragraphs 16 and 18:

    16.    Further, members of NAVTECH have advised NAVTECH that they have been turned down from referrals and that their surveys have "not been accepted" by insurers in a capricious and arbitrary manner at the behest of BOAT U.S.'s referral services.

                      \*   \*   \*

    18.    Further, multiple members of Plaintiff training organization have been illegally and unlawfully denied opportunities without basis through confusion and tortious interference in the marketplace.

Comp., p. 4.

a. *Injury in Fact*

With regard to the element of injury in fact, Navtech has failed to meet the provisions of Federal Rule of Civil Procedure 8(a)(2), which require a "short and plain statement of the claim showing that the pleader is entitled to relief."  To comply with Rule 8(a)(2), a complaint must be "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face where the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Here, there are no factual allegations to give any meaningful support to Paragraphs 16 and 18 of the Complaint.  It is unknown what Navtech means when it alleges that its members have been "turned down from referrals," that their "surveys 'have not been accepted' by insurers," or that they have been "denied opportunities."  It is impossible to know, without more factual support, whether these alleged actions have caused injury in fact to any of Navtech's members.

b. *Causation*

There also are no factual allegations that the actions of Boat/U.S. *caused* injury to Navtech's members.  Though Navtech alleges that it has members that have been "turned down from referrals" and whose surveys have "not been accepted" by insurers, there are no factual allegations to link Boat/U.S.'s alleged actions to those things.  In other words, Navtech has not alleged how Boat/U.S.'s alleged referrals or website information caused Navtech's members to be turned down from referrals, have their surveys not be accepted by insurers, or be denied opportunities.

11

c. *Redressability*

Finally, there are no factual allegations showing a substantial likelihood that the requested relief ($1.1 million for lost future business) will remedy the alleged injury in fact of Navtech's members – required for the third prong of redressability.

### 2. *Germane to the Organization's Purpose*

The purpose of Navtech is hard to discern from the allegations in the Complaint. Though it is alleged that Navtech provides education and licensure services, it is unknown what types of education and licensure are provided, to whom the education services are offered, and what the standards are for licensure. The membership program is also undefined – specifically unknown is what services Navtech provides to its members in connection with that program.

Although it is unclear what interest Navtech is trying to protect with this lawsuit, it appears to be related to a generalized protection of its members' ability to conduct business. It is unknown if this interest is germane to Navtech's education and licensure offerings, and it is unknown whether it is germane to Navtech's membership program, since there are no allegations setting forth the services Navtech provides to its subscribing members.

### 3. *Participation of Individual Members*

The determination of "whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought." *Warth v. Seldin*, 422 U.S. 490, 515 (1975). When an association seeks relief in damages, "the damages claims are not common to the entire membership,

nor shared by all in an equal degree." *Id.* "[W]hatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." *Id.* at 515-516. *See also In re Managed Care Litigation*, 595 F.Supp.2d 1349, 1358 (S.D. Fla. 2009) (individual claims for money damages "would require more individualistic proof of both the fact and extent of injury to each individual member's claim.").

Here, if Navtech seeks to recover damages on behalf of its members, it would require individualized proof to identify those members who would be entitled to any monetary relief and the amount of such relief. It is hard to imagine a more fact-specific inquiry (or more speculative investigation) than trying to determine if a referral of a NAMS or SAMS member or reference to NAMS and SAMS on a website proximately caused a specific surveyor to lose a job. Such an analysis would require a review of the background and qualifications of the prospective surveyor and depositions of all of the relevant decision-makers.

For all the above reasons, Navtech lacks standing to pursue, on behalf of its members, the claims asserted in the Complaint, and those claims should, therefore, be dismissed.

## C.  Navtech is not entitled to sue for monetary damages under FDUTPA.

Navtech has not alleged that it is a consumer of any goods or services of Boat/U.S. Prior to 2001, this would have been a clear basis for dismissal of Navtech's claims for monetary damages under FDUTPA, since such claims were, at that time, expressly limited to consumer transactions. *See* Fla. Stat. §501.203(1) (1993) (defining

consumer transaction).   In 2001, §501.211(2) was amended by substituting the term "person" for "consumer."   Since that amendment, while there is some division of authority,[4] the majority view in Florida's federal courts is that the amendment does not expand the statute to reach non-consumers where there is no consumer transaction -- a purchase of goods or services – at issue.[5]   Under this majority view, Navtech, as a non-party to any consumer transaction, would be precluded from pursuing a claim for monetary damages under FDUTPA.

In addition, even if the Court determines that Navtech can bring a private action for monetary damages, it must still allege and prove the existence of a consumer *injury*. *Cemex Construction Materials Florida, LLC v. Armstrong World Industries, Inc.*, Case

---

[4]      *See, e.g., e-ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265 (M.D. Fla. 2016); *Honson Elec. Contracting Co., Inc. v. Bellsouth Telecommunications, Inc.*, Case No. 3:07-cv-598-J-32MCR, 2008 WL 360803 (M.D. Fla. Feb. 8, 2008); *Furmanite America, Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134 (M.D. Fla. 2007); *True Title, Inc. v. Blanchard*, Case No. 6:06-cv-1871-Orl-19DAB, 2007 WL 430659 (M.D. Fla. Feb. 5, 2007).

[5]      *See, e.g., Kertesz v. Net Transactions, Ltd.*, 635 F.Supp.2d 1339 (S.D. Fla. 2009); *Gibson v. Resort at Paradise Lakes, LLC*, Case No. 8:16-cv-791-T-36AAS, 2017 WL 3421532 (M.D. Fla. 2017); *Innovative Strategic Communications, LLC v. Viropharma, Incorporated*, Case No. 8:11-cv-T-33TBM, 2012 WL 3156587 (M.D. Fla. Aug. 3, 2012); *Taft v. The Dade County Bar Association, Inc.*, Case No. 1:15-cv-22072-KMM, 2015 WL 5771811 (S.D. Fla. Oct. 2, 2015); *Carroll v. Lowes Home Centers, Inc.*, Case No. 12-23996-CIV; 2014 WL 1928669 (S.D. Fla. May 6, 2014); *Hermosilla v. The Coca Cola Co.*, Case No. 10-21418-CIV-MOORE/SIMONTON, 2010 WL 11553428 (S.D. Fla. Aug. 17, 2010); *Raimbeault v. Accurate Machine & Tool, LLC*, 302 F.R.D. 675 (S.D. Fla. 2014); *Leon v. Tapas & Tintos, Inc.*, 51 F.Supp.3d 1290 (S.D. Fla. Oct. 7, 2014); *Technology Medical Advancements, LLC v. Advanced Medical Distributors*, Case No. 15-80194-Civ-Rosenberg/Brannon, 2015 WL 11438210 (S.D. Fla. Oct. 1, 2015); *Fin-S Tech, LLC, Fin-S v. Surf Hardware Int'l-USA, Inc.*, Case No. 13-CV-80645, 2014 WL 12461349 (S.D. Fla. Jan.7, 2014); *Pinecrest Consortium, Inc. v. Mercedes-Benz USA, LLC*, Case No. 13-2083-CIV, 2013 WL 1786356 (S.D. Fla. Apr. 25, 2013).

No. 3:16-cv-186-J-34JRK, 2018 WL 905752, *15 (M.D. Fla. Feb. 15, 2018); *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach Co., Fla.*, 169 So. 3d 164 (Fla. 4th DCA 2015). Navtech has not made any such allegations in the Complaint.

Because Navtech has not alleged the existence of a consumer transaction at issue in this case or that there has been a consumer injury, it does not have standing to pursue a claim against Boat/U.S. for monetary damages under FDUTPA.

## V.   TORTIOUS INTERFERENCE CLAIM (COUNT I)

In Count I of the Complaint, Navtech attempts to plead a cause of action against Boat/U.S. for tortious interference with a business relationship. In this Count, Navtech alleges that its members have been "turned down from referrals," that their "surveys have 'not been accepted' by insurers," and that they have been "denied opportunities without basis." (¶¶16 and 18, Comp.)

The elements of a claim for tortious interference with a business relationship are: "(1) the existence of a business relationship…, (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). Although a "protected business relationship need not be evidenced by an enforceable contract," "'the alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights.'" *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994), citing *Tamiami Trail Tours*, 463 So. 2d at 1127, and *Register v. Pierce*, 530 So. 2d 990, 993 (Fla. 1st DCA 1988).

A claim for tortious interference with a business relationship cannot be based upon alleged interference with a plaintiff's relationship to the community at large. *Ethan Allen*, 647 So. 2d at 815 ("As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered."). *See also Ferguson Transportation, Inc. v. North American Van Lines, Inc.*, 687 So. 2d 821, 822 (Fla. 1996) (Supreme Court of Florida agreed that the trial court should have directed a verdict in favor of a defendant on a claim for tortious interference with a business relationship, where the plaintiff had presented evidence only of a relationship with the public at large and not an identifiable person).

Because Navtech has not identified in the Complaint any specific business relationship that Boat/U.S. knew about and then intentionally and unjustifiably interfered, Navtech has failed to properly state a claim for tortious interference upon which relief can be granted and Count I of the Complaint should be dismissed.

## VI.   FDUTPA CLAIM (COUNT II)

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.204(1). Stating a claim under FDUTPA requires allegations of (1) a deceptive act or unfair trade practice, (2) causation, and (3) actual damages. *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013), citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006).

### A.    The Acts Complained of do not Constitute Trade or Commerce.

FDUTPA prohibits unfair or deceptive acts or practices "in the conduct of any trade or commerce."  Fla. Stat. §501.204(1).  The term "trade or commerce" is defined as:

> (8) "Trade or commerce" means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated.  "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

Fla. Stat. §501.203(8).

The relevant inquiry here is not whether a defendant is involved in trade or commerce generally, but whether the alleged actions at issue in a lawsuit constitute trade or commerce.  Fla. Stat. §501.204(1).  *See, e.g., Kelly v. Palmer, Reifler, & Associates, P.A.*, 681 F.Supp.2d 1356, 1374 (S.D. Fla. 2010).

The actions of Boat/U.S. – allegedly giving preference to NAMS and SAMS in making referrals and including NAMS and SAMS on an informational page found on a website – do not constitute trade or commerce.  There are no allegations that the alleged referrals of Boat/U.S. provide any economic or business benefit to Boat/U.S., or that the referrals are made to advertise, solicit, provide, offer, or distribute any good or service of or by Boat/U.S.  Also, the specific page from the website – as shown on Exhibit 1 to the Complaint – provides *general* information to boat owners on how to obtain a marine survey, what types of information would be included on a survey report, and what types of surveys would meet the requirements for "insurance through the BoatUS program."  This excerpt from the website also does not advertise, solicit, provide, offer, or distribute

anything.  Thus, there is no showing that these alleged actions constitute "trade or commerce" and, therefore, Count II cannot be maintained.

### B.  There are no allegations of a deceptive act.

Navtech has failed to set forth any allegations of a deceptive act by Boat/U.S. Deception under the FDUTPA occurs if there is a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."  *Millennium Communications & Fulfillment, Inc. v. Office of Attorney General, Dept. of Legal Affairs, State of Fla.*, 761 So. 2d 1256 (Fla. 3d DCA 2000).

There are *no* allegations in Navtech's Complaint that would support Navtech's conclusory assertions that Boat/U.S.'s alleged referral services or that the website references to NAMS and SAMS are deceptive, or that they have misled *any* consumer to the consumer's detriment.  Further, Navtech has not identified any duty or requirement that Boat/U.S. make referrals to Navtech members or include Navtech on a website.

To the extent that Navtech is claiming that the logos of NAMS and SAMS on its website are deceptive because they "bear[] uncanny resemblance to governmental agencies" (¶14, Comp.), the Complaint contains no factual allegations to support such an assertion.  Further, a simple review of the logos at issue in Exhibit 1 to the Complaint expressly contradicts Navtech's conclusory assertion.  The logos do not reference any governmental agency, they do not have any words which would tend to suggest a governmental relationship (like "city," "Florida," or "national"), nor are there any images included in the logos that mirror governmental logos or crests.

Because there are no factual allegations to support Navtech's conclusory assertion of deceptive actions, the Complaint as currently drafted must be dismissed.

**C.  There are no allegations of an unfair trade practice.**

An unfair act or practice under FDUTPA requires that an injury to a consumer (1) be substantial, (2) not be outweighed by any countervailing benefits to consumers or competition that the practice produces, and (3) be an injury that consumers themselves could not reasonably have avoided.  *See Porsche Cars North America, Inc. v. Diamond*, 140 So. 3d 1090, 1096-97 (Fla. 3d DCA 2014).  *See also Casey v. Florida Coastal School of Law, Inc.,* Case No. 3:14-cv-1229-J-39PDB, 2015 WL 10096084, *6 (M.D. Fla. 2015) (citing *Porsche* and analyzing the 1980 FTC Unfairness Statement); *Orkin Exterminating Co., Inc. v. FTC*, 849 F.2d 1354, 1365-66 (11th Cir. 1988) (applying the FTC Policy Statement on Unfairness); *LabMD, Inc. v. FTC*, Case No. 16-16270, 2018 WL 2714747 (11th Cir. June 6, 2018) (recognizing the three factors for unfairness).

Here, again, there are no factual allegations of an injury to any consumer, much less an injury to a consumer that is substantial, that is not outweighed by any countervailing benefits to consumers or competition that the practice produces, and that could not have reasonably been avoided by consumers themselves.

**D.  There are no allegations to support causation.**

A critical requirement in a damage claim is proof that the "actual damages" were caused by reasons of the substantive violation.  *See* §501.211(2);  *Himes v. Brown & Co. Securities Corp.*, 518 So. 2d 937-38 (Fla. 3d DCA 1987) (court found no recovery when alleged misleading and false statements did not factually cause out-of-pocket losses); *In*

*re:  Crown Auto Dealerships, Inc.*, 187 B.R. 1009, 1018 (Bankr. M.D. 1995) (claimant asserted that failure to disclose that purchased automobile had been stolen failed to prove injury in fact, and subjective feelings of disappointment are insufficient to find a violation).  Navtech fails to allege this required element of causation.  There are no clear allegations that the conduct of Boat/U.S. caused actual damage to Navtech or its members.  Although ¶16 alleges that surveys of Navtech's members have "not been accepted" by insurers "in a capricious and arbitrary manner at the behest of BOAT U.S.'s referral services," there are no factual allegations as to what that means, or how Boat/U.S.'s alleged referrals caused insurers not to accept surveys prepared by Navtech's members.

### E. Damages recoverable under FDUTPA do not include "lost future business."

Section 501.211(2) of FDUTPA states in relevant part that "in any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages plus attorney's fees and costs …."  Florida case law has defined actual damages as the difference between the value of the product or service as represented (the sales price), and the value of the product or service received.  *See, e.g., Rollins, Inc. v. Butland*, 951 So. 2d 860 (Fla. 2d DCA 2006) (consequential damages, nominal damages, and damages for disappointed expectations are not recoverable under §501.211(2)).  *See also Carriuolo v. General Motors Co.*, 823 F.3d 977, 986 (11th Cir. 2016) (adopted the *Rollins* definition of actual damages).  "For the purpose of recovery under FDUTPA, 'actual damages' do not include consequential damages, precluding

recovery of future lost profits." *Siever v. BWGaskets, Inc.*, 669 F.Supp.2d 1286, 1293 (M.D. Fla. 2009) (citations omitted).

In this case, Navtech seeks "damages in the amount of $1.1 million for lost future business." (¶ 25, Comp.)  As a matter of law, such damages do not constitute "actual damages" and, therefore, are not recoverable by Navtech in this case.

## VII.   CONCLUSION

Because the First Amendment precludes Navtech's claims as a matter of law, Boat/U.S. requests that the Court dismiss this case *with prejudice*.  If the Court determines that the First Amendment does not bar Navtech's claims, then Boat/U.S. requests dismissal for the remaining reasons set forth above.

WHEREFORE, Defendant, Boat/U.S., Inc., hereby respectfully requests entry of an order dismissing this case with prejudice.

*/s/ Sally R. Culley*
LORI J. CALDWELL, ESQUIRE
Florida Bar No. 0268674
SALLY R. CULLEY, ESQUIRE
Florida Bar No. 0095060
RUMBERGER, KIRK & CALDWELL
A Professional Association
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133

*Attorneys for Defendant Boat/U.S., Inc.*

Respectfully submitted,

/s/ Sally R. Culley
LORI J. CALDWELL
Florida Bar No.:  0268674
E-mail:  lcaldwell@rumberger.com
SALLY ROGERS CULLEY
Florida Bar No.:  0095060
E-mail:  sculley@rumberger.com
RUMBERGER, KIRK, & CALDWELL, P.A.
300 South Orange Avenue, Suite 1400
Orlando, Florida 32801
Tel:  407.872.7300
Fax: 407.841.2133
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 8, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:  **Robert Phaneuf, Esq.** at rphaneuf@legalbrains.com.

/s/ Sally R. Culley
LORI J. CALDWELL
Florida Bar No.:  0268674
E-mail:  lcaldwell@rumberger.com
SALLY ROGERS CULLEY
Florida Bar No.:  0095060
E-mail:  sculley@rumberger.com
RUMBERGER, KIRK, & CALDWELL, P.A.
300 South Orange Avenue, Suite 1400
Orlando, Florida 32801
Tel:  407.872.7300
Fax: 407.841.2133
Attorneys for Defendant

22