UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Case No: 2:19-cv-00184-FtMM

NAVTECH US SURVEYORS USSA
INC., a Florida corporation, as
successor to Navtech US Captain US
Surveyors, Inc., and NAVTECH US
CAPTAIN US SURVEYORS LLC, a
Delaware Corporation,

       Plaintiffs,

v.

BOAT/U.S., INC.,

       Defendant.

_____/

## PLAINTIFF'S AMENDED COMPLAINT

Plaintiffs, NAVTECH US SURVEYORS USSA INC., a Florida corporation, as successor to Navtech US Captain US Surveyors, Inc., and NAVTECH US CAPTAIN US SURVEYORS LLC, a Delaware corporation (hereafter "Navtech" or "Plaintiff"), by and through undersigned counsel states and alleges as follows:

1

## NATURE OF THE CASE

1. This is an action alleging violation of Florida Statute (Insurance Field representative Licensing Requirements), antitrust, unfair competition, tortious interference, unlawful restraint of trade, and violations under Florida's Deceptive and Unfair Trade Practices.

2. Marine surveyors are hired to provide clients with boat appraisals, insurance surveys, and evaluations of the condition of marine vessels.

3. Plaintiff provides marine survey education and licensing. Plaintiff also has subscribing members who include marine surveyors.

4. Virtually all those in need of marine surveys – and particularly insurance companies (such as Defendant) – require that the surveyor providing them hold professional "accreditation" with one of the accrediting bodies: Navtech ("USSA"), Society of Accredited Marine Surveyors ("SAMS") or the National Association of Marine Surveyors ("NAMS").

5. This illegal rebate arrangement that has previously arisen in the course of litigation against Boat/U.S. has provided sworn evidence of illegal marketplace "price fixing" through rebate incentives.  This ongoing practice by Boat/U.S. damages Plaintiff under anti-trust restrictions and also violates Florida Statute.

6. Because the SAMS entity functions as a self-regulator of Marine Surveyor Accreditation (in competition with Plaintiff), the incentives in place for Defendant in exchange for insurance discounts is tantamount to an illegal "rebate" system between self-regulators and insurers.

7. Even if this "rebate" system between a self-regulator and an insurer is somehow "legal," this conduct is anti-competitive and captures a market to the damage of Plaintiff as explained herein.

8. Defendant has also indicated a pre-approval of surveys in its statements for its underwriting standards, e.g., "the National Association of Marine Surveyors (NAMS) and the Society of Accredited Marine Surveyors (SAMS) are professional organizations having rigorous examination programs for their membership.  BoatUS Marine Insurance underwriters will accept value surveyors or pre-purchase surveyors from surveyors with a SAMS designation of 'AMS' with a specialized classification of 'Y-SC' (yacht and small craft) or NAMS designation of 'CMS' with a specialized service code of 'A' (yacht and small craft).  It's appropriate to ask the surveyor you select for a copy of a resume, as well as a sample survey of the type that you are requesting." (Doc. 3-1).

9. Exclusion of Plaintiff as an authorized trainer and certifier of Marine Surveying is an anti-competitive boycott and does not enjoy the protections of commercial speech.

## THE PARTIES

### Plaintiff NAVTECH US SURVEYORS USSA INC

10. Plaintiff NAVTECH US SURVEYORS USSA INC. is a corporation organized under the laws of Florida with its principal place of business at 13430 McGregor Blvd., Fort Myers, Florida, 33919-5924.

11. NAVTECH US SURVEYORS USSA INC., is a for-profit educational institution that trains marine surveyors.

### Plaintiff Navtech US Captain US Surveyors, Inc.

12. Plaintiff Navtech US Captain US Surveyors, Inc. was a corporation organized under the laws of Florida with its principal place of business at 13430 McGregor Blvd., Fort Myers, Florida, 33919-5924.

13. Navtech US Captain US Surveyors, Inc., was a for-profit educational institution that trains marine surveyors.

14. The corporation was dissolved and all corporate assets are inured to its present organization as NAVTECH US SURVEYORS USSA INC.

**Plaintiff Navtech US Captain US Surveyors, Inc.**

15. Plaintiff Navtech US Captain US Surveyors, Inc. is a corporation organized under the laws of Delaware with its principal place of business at 13430 McGregor Blvd., Fort Myers, Florida, 33919-5924.

16. Navtech US Captain US Surveyors, Inc., is a for-profit educational institution that trains marine surveyors.

17. The corporation was active and all corporate assets are inured to its present organization as NAVTECH US SURVEYORS USSA INC.

**Defendant Boat/U.S., Inc.**

18. Defendant Boat/U.S., Inc. is a corporation organized under the laws of the Commonwealth of Virginia, with its former principal place of business at 880 South Pickett Street, Alexandria, Virginia.

19. Defendant Boat/U.S., Inc.'s principal place of business is 5323 Port Royal Road, Springfield, VA, 22151.

20. Boat/U.S. is a for-profit national boating club that sells marine insurance to its members and other boaters.

## **JURISDICTION AND VENUE**

21. This Court has personal jurisdiction over Defendant Boat/U.S. (without limitation) pursuant to 28 U.S. § § 1332, 1441, and 1446 as Defendant gave notice of removal to the Court on March 25, 2019. (Doc. 1 at 1).

22. Boat/U.S. is also registered to do business in Florida.

23. Venue is appropriate pursuant to 28 U.S.C. § 1391(a)(2) because a substantial portion of the events at issue in this action took place in this judicial district.

## **STANDING**

24. Navtech sues Defendant on its own behalf and in its own right.

25. Navtech is a competitor of SAMS, NAMS, and other organizations that train marine surveyors.

26. Because Defendant entered into illegal rebate operation with Plaintiff's competitor(s) (and still engages in this rebate operation to provide reduced membership fees) in exchange for valuable consideration, Defendant has been engaged in an ongoing enterprise in violation of insurance regulations.

27. Navtech avers that the continual violation of insurance regulations have adversely affected its business and contractual relations with its current and former students who have been denied survey opportunities.

28. Navtech's current, former, and prospective members have been seduced away from Navtech curricula.

29. Through Boat/U.S.'s ongoing "pay to play" scheme in the marine insurance underwriting/survey industry, it has been impossible for Navtech to garner and maintain market share in an increasingly monopolistic environment.

30. Furthermore by this "pay to play" scheme induced by Defendant and competitors (SAMS, et al.) , Navtech's contractual relations with its clients, current and future, have been harmed.

31. Accordingly, Navtech has suffered direct and proximate harm and has standing to pursue its causes of action against Boat/U.S. as outlined through meeting the material elements under specific allegations herein.

## FACTS COMMON TO ALL COUNTS

32. Defendant Boat/U.S. is a boating organization which issues marine insurance to boat owners.  Like many other such insurers, Boat/U.S. requires boat owners seeking insurance with it to provide it with a survey before it will issue them a marine insurance policy.

33. Such a survey provides the insurer with the specifications and measurements for the vessel, including identifying its designer, type, year of manufacturer,

and boat-builder, and further describes the equipment and systems in place on the boat.

34. Navtech is an educator of Marine Surveyors in the Marine Surveying Industry.

35. Established in 1987, Plaintiff is a premier educator in the field and has extended training to thousands of individuals worldwide, some of whom have law degrees, are former military, are engineer-trained, are boating professionals in other marine verticals, are doubly accredited by SAMS or competitors in the peer and membership surveying industry, and have a plethora of credentials to backstop their legitimacy in the industry.  Further, they are business entrepreneurs and are hired by boating consumers directly through the devices of their business acumen with only ancillary, complementary impressions bolstered through their membership of various trade organizations to promote their own visibility in the field.  Surveys performed by surveyors trained by Navtech surveyors have been accepted for marine insurance underwriting for decades, including but not limited to Lloyd's of London, and other major insurance companies.

36. Only Defendant, Boat/U.S., (the largest insurance carrier) patently rejects Navtech surveys in its published material and information packets.

37. Boat/U.S. has engaged in anti-competitive and tortious conduct giving rise to the causes of action outlined in this amended complaint.

38. Defendant has endorsed, through its website, underwriters, and employees specific organizations, e.g., "Make sure [the survey] report indicates the boat was also inspected for compliance with the current boating safety standards set by the National Fire Protection Association (N.F.P.A.), the American Boat and Yacht Council (A.B.Y.C.), as well as U.S. Coast Guard standards." (Doc. 3-1).

39. Defendant has excluded Navtech at every opportunity in its public communications relating to "preferred organizations."

## Count 1: Violation of Federal Antitrust Statute, 15 U.S.C. § 1 through Violation of Florida Statute § 626.730 (Insurance Regulation 4-40)

40. Navtech re-alleges and incorporates herein, as if fully set forth, the preceding paragraphs of this Amended Complaint.

41. To prevail in a private cause of action under 15 U.S.C. § 1, the plaintiff must show that (1) the injury is a type that antitrust laws were intended to prevent and (2) plaintiff's injury must flow from that which makes the defendant's acts unlawful. *See* "Plaintiffs must prove antitrust injury, which is to say injury of the type the **antitrust laws were intended to prevent and that**

**flows from that which makes defendants' acts unlawful**.  The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.  It should, in short, be 'the type of loss that the claimed violations… would be likely to cause.' *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S., at 125." [Emphasis Supplied] *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S. Ct. 690, 697-98 (1977)

42. Defendant has, and has had, significant market power in the market for marine insurance and industry standards. Defendant operates as one of the oldest and largest insurance companies in the U.S.

43. There is a rebate arrangement between Defendant and competitor(s) of Plaintiff that is causing Plaintiff direct and proximate harm in the marketplace.

44. This type of illegal conduct by Defendant is the type of harm the anti-trust statute was designed to prevent.

45. Revealed in testimony it was stated that Defendant engaged in illegal kickback operations with certain marine surveyor organizations.  *See* "Boat/U.S. and SAMS had a business relationship that included (without limitation) a term requiring SAMS guarantee a certain number of surveyors would maintain memberships with Boat/U.S. and that Boat/U.S. would

provide half-price memberships to SAMS surveyors. *See* SAMS Depo., at 163:13-17; Boat/U.S.-SAMS Agreement, Ex. 21 to Boat/U.S. Depo., Ex. 10 hereto." (Doc. 91 of *Briggs v. Boat U.S*, 2014 U.S. Dist. LEXIS 130263).

46. This illegal arrangement harmed Plaintiff's ability to conduct business resulting from the monopolistic activities of Defendant with a competitor.

47. Defendant has, and has had, significant market power in the market for marine insurance surveys.  In addition to Defendant's boating magazine that touts to "America's most-read boating magazine" which claims to provide "insight from top experts" in the marine industry, Defendant's tow boat company, and other membership amenities (including its price-sharing scheme)[1], Defendant operates as one of the oldest and largest insurance companies in the U.S.

48. The rebate arrangement between Defendant and Plaintiff's competitor harms Navtech by Defendant's concerted actions.

49. This is not just economic waste at the consumer's expense but an attack on quality and safety through eliminating the market supply and competition of trained surveyors.

50. This illegal conduct of "membership incentives" through insurance companies has previously been decided in interpreting Florida Statute.

---

[1] with a Navtech-competitor surveyor organization

51. Through failure to accept cheaper surveys performed by Surveyors trained by Navtech, Boat/U.S. is failing to disclose, through its agents, the full opportunities that would still allow for coverage.

52. Failure of the consumer to receive an adequate survey of his or her choosing is another insurance regulation through restrictive "memberships."

53. The Florida courts have previously addressed the perils of "Membership" opportunities similar to the terms of the SAMS/Defendant dual membership deals **[driving up costs for consumers and placing rivals out of business]**. *See* "The agents of Mr. Auto did not tell their customers that they could save roughly 40% of the total price by declining this opportunity to become a member in good standing of the touring club." *Thomas v. State, Dep't of Ins. & Treasurer, 559 So. 2d 419, 421 (Fla. 2d DCA 1990)*

54. Much like the "touring club" (*supra*), SAMS is another *optional* club when electing to make decisions in issuing policies.

55. Upon information and belief, the agreements between the Defendant and competitor training organizations resulted in illegal contractual "rebate" arrangement in violation of Florida Insurance Law.

56. The specific arrangement contemplated between SAMS and Boat/U.S. was an ill-gotten contractual arrangement to the detriment of competition in the marketplace and is the type antitrust laws were intended to prevent.

57. As SAMS functions much as a "regulator" in the way that Navtech functions as a trainer/regulator, Defendant's market preference to break statute in exchange for preference of a "regulator" is anti-competitive behavior.

58. By incentivizing dual membership opportunities, Plaintiff's injury flowed from that which makes the defendant's acts unlawful. (See violation of statute concerning insurance membership kickbacks by admission of SAMS (Doc. 91 of *Briggs v. Boat U.S*, 2014 U.S. Dist. LEXIS 130263). )

59. Already in violation of Florida Statute, this illegal conduct to violate insurance regulation gave Defendant an illegal "edge" in the surveying marketplace.

60. With its competitors engaging in unscrupulous and illegal conduct, Navtech was unable to compete against SAMS or other businesses who provided incentives through membership in organizations.

61. This harm was the direct and proximate result of Boat/U.S.'s decision to "capture" the market and dominate its preference of surveying organization.

62. This "compensation" in the insurance business is illegal.

63. The illegal kick-back scheme perpetrated by BOAT/U.S. and SAMS violates Florida Statute § 626.730(1), specifically at the provision that precludes, "compensation based upon insurance solicited or procured by or through him or her upon his or her own interests or those of other persons with

whom he or she is closely associated in capacities other than that of insurance agent or customer representative."[2]

64. Because the secret agreement between SAMS (a "regulator") and Boat/U.S. was made public in the filing of a prior lawsuit, Navtech, on information and belief, has reasonably been excluded in the marketplace by Boat/U.S.'s ongoing violation of insurance law.

65. This is not only illegal for admitted violation of the Florida Insurance regulation, but this behavior is anticompetitive in nature, and both elements under the federal statute are satisfied to give rise to a private cause of action for a claim sounding in anti-trust.

WHEREFORE, NAVTECH demands a trial by jury of all issues so triable. Plaintiff furthermore prays for judgment against defendant, recovery of harm perpetuated by Defendant's anticompetitive and tortious practices in violation in Florida Statute, damages in the amount of $1,200,000 for lost future business from Plaintiff by the illegal acts outlined herein and for such other equitable relief as the honorable court deems just and proper.

**Count 2: Intentional Interference with Prospective Business Relations**

---

[2] Florida Statute 626.730(1)

66. Navtech re-alleges and incorporates herein, as if fully set forth, the preceding paragraphs of this Amended Complaint.

67. To prevail on a tortious interference claim, Navtech must show: "(1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship; (3) the defendant's interference with it through improper motive of means; and (4) Navtech's loss of advantage directly resulting from the defendant's conduct." *Am. Private Line Servs., Inc. v. E. Microwave, Inc.*, 980 F.2d 33, 36 (1st Cir. 1992) (citing *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 551 N.E.2d 20 (1990).

*(1) A business relationship or contemplated contract of economic benefit*

68. Similar to the agreement entered into between SAMS and Defendant, Plaintiff reasonably expected that Boat/U.S. would similarly entertain opportunities to engage in business with Plaintiff.

69. As Boat/U.S. routinely engaged and interacted with Surveyor Organizations, Navtech remained in indirect contractual relations with Defendant.

70. Captain Todd Walker, member of Plaintiff, advised Plaintiff that [he has] "been told and e-mailed from Boat US that they do not recommend any other Marine Surveyor other than NAMS and SAMS surveyors." (Doc. 3-3).

71. Because Defendant could reasonably expect that advising a member of Plaintiff that there existed a business relationship or contemplated contract of economic benefit, a business relationship existed in that Plaintiff's curriculum was specifically geared toward training surveyors catering to the major industry organizations. This contractual relationship between Plaintiff and Defendant was implied and understood through the tight-knit circles in the boating community that Plaintiff's training of surveyors would reasonably expect to serve Defendant's community, and vice versa.

*(2) The Defendant's Knowledge of Such Relationship*

72. Because Captain Todd Walker, and other members of Plaintiff advised that their surveyor status had been added to an "approved list" incorporating the membership organizations, Defendant acknowledged such relationship.

73. Specifically Captain Todd Walker, member of Plaintiff advised that [he] "was told would be added to an approved list but no client can see that list easily." (Doc. 3-3).

74. Because Defendant had added Plaintiff's member to an approved list, the duality of membership in the list as well as member of Plaintiff organization presupposed that the individuals existing in this intermediary state of dual membership would impute a contractual relationship.

16

75. As Captain Todd Walker was neither a third party beneficiary nor third party, but rather enjoyed privity with both Defendant and Plaintiff, Todd Walker represented an agent of each organization dually serving the business interests of the contracting parties.

76. To wit, Captain Todd Walker engaged in surveys on behalf of Navtech while also serving the interests of Boat/U.S. in execution of his duties.

77. Under the basic precepts of contract law, serving as a "dual agency" provided the mutuality of obligation to perform in the industry.

78. At a minimum, Defendant maintained knowledge of such relationship with Navtech as a training organization serving its insurance underwriting needs.

*(3) The Defendant's Interference with it through Improper Motive of Means*

79. As explained *supra*, Defendant interfered through improper motive of means by incentivizing membership in the SAMS organization.

80. Revealed in testimony it was stated that Defendant engaged in illegal kickback operations with certain marine surveyor organizations. *See* "Boat/U.S. and SAMS had a business relationship that included (without limitation) a term requiring SAMS guarantee a certain number of surveyors would maintain memberships with Boat/U.S. and that Boat/U.S. would provide half-price memberships to SAMS surveyors. *See* SAMS Depo., at

163:13-17; Boat/U.S.-SAMS Agreement, Ex. 21 to Boat/U.S. Depo., Ex. 10

hereto." (Doc. 91 of *Briggs v. Boat U.S*, 2014 U.S. Dist. LEXIS 130263).

*(4) Navtech's Loss of Advantage Directly Resulting from the Defendant's Conduct*

81. Navtech has lost and continues to lose its advantage directly resulting from Defendant's conduct in its decision to ignore insurance statute / standards in the marine surveying industry.

82. Navtech has lost interest in both prospective and currently paying clients interested in the marine education curriculum.

83. Specifically Captain Todd Walker states [he has] "considered renewing my membership several times but I always come back because I just cannot handle the SAMS and NAMS requirements…[SAMS and NAMS] do not accept … they do not have reciprocity for what I have already accomplished and my proven track record." (Doc. 3-3).

84. By causing members directly to leave Navtech's business through forcing members to renew or pay competitor organizations through certification, Navtech has faced a loss of advantage directly resulting from Boat/U.S.'s admitted conduct of entering into an illegal contractual relationship to incentivize membership and interfere with membership of Navtech's members.

18

WHEREFORE, NAVTECH demands a trial by jury of all issues so triable. Plaintiff furthermore prays for judgment against defendant, recovery of harm perpetuated by Defendant's anticompetitive and tortious practices in violation in Florida Statute, damages in the amount of $1,200,000 for lost future business from Plaintiff by the illegal acts outlined herein and for such other equitable relief as the honorable court deems just and proper.

## Count 3: Intentional Interference with Existing Business Relations

85. Navtech re-alleges and incorporates herein, as if fully set forth, the preceding paragraphs of this Amended Complaint.

86. To prevail on a claim for tortious interference with existing contractual relationships, Navtech must show "(1) the existence of a… contract; (2) knowledge of the … contract on the part of the defendant; (3) an intentional and unjustified … procurement of the contract's breach; and (4) damage to the plaintiff as a result of the interference." *Howard v. Murray*, .

### (1) The Existence of a… Contract

87. Similar to the agreement entered into between SAMS and Defendant, Plaintiff reasonably expected that Boat/U.S. would similarly entertain opportunities to engage in business with Plaintiff.

19

88. As Boat/U.S. routinely engaged and interacted with Surveyor Organizations, Navtech remained in indirect contractual relations with Defendant.

89. Captain Todd Walker, member of Plaintiff, advised Plaintiff that [he has] "been told and e-mailed from Boat US that they do not recommend any other Marine Surveyor other than NAMS and SAMS surveyors." (Doc. 3-3).

90. Because Defendant could reasonably expect that advising a member of Plaintiff that there existed a business relationship or contemplated contract of economic benefit, a business relationship existed in that Plaintiff's curriculum was specifically geared toward training surveyors catering to the major industry organizations.  This contractual relationship between Plaintiff and Defendant was implied and understood through the tight-knit circles in the boating community that Plaintiff's training of surveyors would reasonably expect to serve Defendant's community, and vice versa.

*(2) Knowledge of the … Contract on the Part of the Defendant*

91. Because Captain Todd Walker, and other members of Plaintiff advised that their surveyor status had been added to an "approved list" incorporating the membership organizations, Defendant acknowledged such relationship.

92. Specifically Captain Todd Walker, member of Plaintiff advised that [he] "was told would be added to an approved list but no client can see that list easily."  (Doc. 3-3).

93. Because Defendant had added Plaintiff's member to an approved list, the duality of membership in the list as well as member of Plaintiff organization presupposed that the individuals existing in this intermediary state of dual membership would impute a contractual relationship.

94. As Captain Todd Walker was neither a third party beneficiary nor third party, but rather enjoyed privity with both Defendant and Plaintiff, Todd Walker represented an agent of each organization dually serving the business interests of the contracting parties.

95. Captain Todd Walker engaged in surveys on behalf of Navtech while also serving the interests of Boat/U.S. in execution of his duties.

96. Under the basic precepts of contract law, serving as a "dual agency" provided the mutuality of obligation to perform in the industry.

97. At a minimum, Defendant maintained knowledge of such relationship with Navtech as a training organization serving its insurance underwriting needs.

*(3) An Intentional and Unjustified Procurement of the Contract's Breach*

98. As explained *supra*, Defendant interfered through improper motive of means by incentivizing membership in the SAMS organization.

99. Revealed in testimony it was stated that Defendant engaged in illegal kickback operations with certain marine surveyor organizations. *See* "Boat/U.S. and SAMS had a business relationship that included (without

limitation) a term requiring SAMS guarantee a certain number of surveyors would maintain memberships with Boat/U.S. and that Boat/U.S. would provide half-price memberships to SAMS surveyors. *See* SAMS Depo., at 163:13-17; Boat/U.S.-SAMS Agreement, Ex. 21 to Boat/U.S. Depo., Ex. 10 hereto." (Doc. 91 of *Briggs v. Boat U.S,* 2014 U.S. Dist. LEXIS 130263).

*(4) Damage to the Plaintiff as a Result of the Interference*

100.   Navtech has lost and continues to lose its advantage directly resulting from Defendant's conduct in its decision to ignore insurance statute / standards in the marine surveying industry.

101.   Navtech has lost interest in both prospective and currently paying clients interested in the marine education curriculum.

102.   Specifically Captain Todd Walker states [he has] "considered renewing my membership several times but I always come back because I just cannot handle the SAMS and NAMS requirements…[SAMS and NAMS] do not accept … they do not have reciprocity for what I have already accomplished and my proven track record." (Doc. 3-3).

103.   By causing members directly to leave Navtech's business through forcing members to renew or pay competitor organizations through certification, Navtech has faced a loss of advantage directly resulting from Boat/U.S.'s admitted conduct of entering into an illegal contractual

relationship to incentivize membership and interfere with membership of Navtech's members.

WHEREFORE, NAVTECH demands a trial by jury of all issues so triable. Plaintiff furthermore prays for judgment against defendant, recovery of harm perpetuated by Defendant's anticompetitive and tortious practices in violation in Florida Statute, damages in the amount of $1,200,000 for lost future business from Plaintiff by the illegal acts outlined herein and for such other equitable relief as the honorable court deems just and proper.

## Count 4: Violation of Florida Unfair and Deceptive Trade Practices

104.    To state a FDUTPA violation, a plaintiff must allege (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Sweeney v. Kimberly-Clark Corp.*, No. 8:14-cv-3201-T-17EAJ.

105.    It is deceptive and unfair to deprive the consumer in the marketplace the opportunity to receive a cheaper survey by a Navtech-trained surveyor when the improper "kickback" scheme in place between Boat/U.S. and

SAMS is artificially steering surveyors in the directions of these "regulatory" agencies.

106.    By incentivizing dual membership opportunities, Plaintiff's injury flowed from that which makes the defendant's acts unlawful. (See violation of statute concerning insurance membership kickbacks by admission of SAMS (Doc. 91 of *Briggs v. Boat U.S*, 2014 U.S. Dist. LEXIS 130263). )

107.    Violation of Florida Statute in furtherance of business gains, is *per se*, a deceptive business practice.

108.    Here, Boat/U.S. entered into a contract with SAMS to offer cheaper membership rebates in violation of the Florida 4-40 insurance license requirements and Florida Statute.

109.    Defendant's decision to enter into an agreement with SAMS (a competitor of Plaintiff) in violation of insurance regulation proximately and actually caused harm to Plaintiff by giving its competitors an unfair advantage with "pre approval" on surveys conducted by competitors for the purposes of issuing insurance policies.

110.    Plaintiff suffered actual damages for loss of current, future, and prospective business as well as harm in the industry for being removed from the marketplace of competition.

111.     Because Plaintiff suffered non-renewal fees and was deprived of
opportunities for its members to conduct surveys (and therefore pay Plaintiff
for continuing education), Plaintiff suffered actual damages.

WHEREFORE, NAVTECH demands a trial by jury of all issues so triable.
Plaintiff furthermore prays for judgment against defendant, recovery of harm
perpetuated by Defendant's anticompetitive and tortious practices in violation in
Florida Statute, damages in the amount of $1,200,000 for lost future business from
Plaintiff by the illegal acts outlined herein and for such other equitable relief as the
honorable court deems just and proper.

Dated: July 29, 2019.

/s/ *Robert B. H. Phaneuf, Esq.*

Robert B. H. Phaneuf, Esq.

The Ticktin Law Group

270 SW Natura Ave

Deerfield Beach, Florida

33441

Florida Bar Number 123360

Phone Number (305) 890-0296

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 22, 20198, a true and correct copy of the foregoing was served upon counsels of record.

/s/ *Robert B. H. Phaneuf, Esq.*

Robert B. H. Phaneuf

26